[Cite as *In re Guardianship of Dickerhoof*, 2024-Ohio-2628.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN RE: GUARDIANSHIP OF ALYSSA DICKERHOOF | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| | : | Hon. W. Scott Gwin, J. |
| | : | Hon. William B. Hoffman, J. |
| | : | |
| | : | Case No. 2023CA00097 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Stark County Court of
                                  Common Pleas, Probate Division, Case
                                  No. 231665



JUDGMENT:                         Affirmed



DATE OF JUDGMENT ENTRY:           July 10, 2024



APPEARANCES:


For Plaintiff-Appellee:                    For Defendant-Appellant:

Silas Pisani                               James K. Reed
One Cascade Plaza, Suite 2210              209 South Main Street, Suite 801
Akron, Ohio 44308                          Akron, Ohio 44308

*Delaney, P.J.*

{¶1}  Appellant Joey Rick appeals the July 20, 2023 judgment entry of the Stark County Court of Common Pleas, Probate Division.

**FACTS AND PROCEDURAL HISTORY**

{¶2}  In May of 2018, appellee Edward Dickerhoof was appointed guardian of the person of Alyssa Dickerhoof due to Alyssa's schizophrenia and drug use.

{¶3}  On June 28, 2022, appellee filed a "motion for a no-contact order," requesting the trial court issue a no-contact order between Alyssa and appellant Joey Rick. In the motion, appellee alleged that appellant provided Alyssa with drugs, and Alyssa had not been taking her prescribed medication while living with appellant. Appellee requested Alyssa be served with the motion via certified mail by the clerk of courts, but no service was requested upon appellant.

{¶4}  The trial court held a hearing on July 7, 2022, on the motion for no-contact order. The trial court issued a judgment entry on July 13, 2022. The court found, based on the testimony of appellee, that it was in Alyssa's best interest to have no contact with appellant. The order provided as follows: Rick shall not speak to, visit with, take any money from, or have any contact with Alyssa; Rick shall not abuse, harm, attempt to harm, threaten, follow, stalk, harass, force sexual relations upon, or commit sexually oriented offenses against Alyssa; Rick shall not enter or interfere with the residence of Alyssa, even with the permission of Alyssa; Rick shall not initiate or have any contact with Alyssa at her school, residence, business, or place of employment; and contact includes, but is not limited to landline, cordless, cellular phone, text, instant messaging, fax, email, voice mail, delivery service, social media, blog, electronic communications, letters, or

communication through another person. The judgment entry stated, "failure to comply with this order shall result in an order to show cause as to why sanctions including the imposition of fines and imprisonment, should not be imposed."

{¶5} On July 15, 2022, an "affidavit of service" was filed, which states that Tim Smith, deputy clerk, served a copy of the "judgment entry – no contact" personally to appellant. Appellant did not appeal the July 13, 2022 judgment entry.

{¶6} Appellee filed a motion for contempt of court on January 26, 2023, requesting the trial court find appellant in contempt of court for violating the July 15, 2022 order by having contact with Alyssa.

{¶7} The trial court issued an order to appear and show cause, a notice of hearing, and citation to appear to appellant. These documents were served on appellant via certified mail on February 9, 2023. Counsel for appellee filed a motion to continue the hearing. The trial court granted the motion. Appellant and his counsel were served with the continuance order and hearing notice.

{¶8} The trial court held hearings on May 5, 2023 and July 5, 2023. During the May 5th hearing, counsel for appellant made an oral motion to dismiss the case on the grounds that appellant was never served with a copy of the motion for no-contact order. The trial court proceeded with the hearing.

{¶9} On the date of the continued hearing, July 5, 2023, counsel for appellant filed a written motion to dismiss on the grounds that appellant was never served with a copy of the motion for no-contact order. The trial court denied the motion in a July 5th judgment entry, citing Ohio Rule of Superintendence 66.09(F) and finding "Rick did not have a statutory right to attend the hearing on the guardian's request to restrict contact."

{¶10} The following evidence and testimony was adduced at the May and July hearings. Alyssa had a relationship with appellant for six or seven years. Appellee believes there has been a pattern with Alyssa and appellant's relationship during these years. Alyssa would be doing well, and when she spent time with appellant, "things would fall apart." Alyssa would have psychiatric problems and lose touch with reality because she would do drugs when with appellant. On one occasion when Alyssa returned from appellant's home, she had a "psychotic break" that required hospitalization. In 2020, prior to filing the motion for a no-contact order, appellee wrote to appellant and told appellant he was not to have any contact with Alyssa in order to provide for her safety, mental health, and medical needs.

{¶11} Appellee testified that appellant had personal contact with Alyssa after the issuance of the no-contact order, including phone calls, dropping clothing off to her at Oriana House, and living with her at his home for a period of time. Appellee had access to Alyssa's phone records because she is on his phone plan. Appellee testified appellant called Alyssa eighteen times after the issuance of the no-contact order between January 1, 2023 and February 5, 2023.

{¶12} On cross-examination, counsel for appellant questioned appellee about his testimony at the hearing on the no-contact motion. Appellee testified that appellant gave Alyssa illegal drugs, she did not take her medication when staying with appellant, and appellant encouraged her to work in several strip clubs. Appellee stated Alyssa has had a long-term drug problem for approximately ten years. After the no-contact order was issued, Alyssa was living with appellant. Appellee committed her to the hospital to get

her out of that situation because she was having serious medical issues, such as heart problems, from drug use.

{¶13} Kaitlyn Gates works for Oscar's Towing and Canton Towing. She witnessed appellant and Alyssa together getting Alyssa's vehicle out of impound in December of 2022.

{¶14} Claire Sadler works at Oriana House. Alyssa was at Oriana House in December of 2022 and January of 2023. During that time, Alyssa told Sadler she was communicating with "Joe" on her phone. Sadler stated she saw a significant number of text messages between "Joe" and Alyssa. Alyssa confirmed to Sadler that she was not supposed to have contact with "Joe." Sadler read the texts. Alyssa asked "Joe" for money, and there were "inappropriate" sexual conversations between the two of them.

{¶15} Alyssa is thirty years old. Alyssa testified she did not want the no-contact order; however, her stepfather filed it because "he thinks I am a prostitute and I was being sex trafficked and I am a druggie." Alyssa stated appellant has never, during their nine-year relationship, sex trafficked her or provided her with any illegal drugs. Alyssa would like the no-contact order rescinded.

{¶16} Alyssa stated she had contact with appellant while she was at Oriana House via the telephone, but has not had contact with him in several months. Prior to the no-contact order, she lived in appellant's basement, and he sometimes would help her pay bills. Appellee did not confer or speak to Alyssa about whether stopping communication with appellant would be in her best interest.

{¶17} Appellant testified he has no prior criminal convictions and has never consumed any illegal drugs. Appellant met Alyssa at Johnny J's pub approximately nine

years ago. Appellant testified he is not in a romantic relationship with Alyssa, but is her friend. He does not supply her with drugs, and has never engaged in sex trafficking.

{¶18} Appellant admitted he was served with the no-contact order on July 15, 2022, via certified mail. Appellant acknowledged he spoke with Alyssa on the phone after July 15, 2022, helped her get her car out of the impound lot in November of 2022, and went to Oriana House and spoke to her in December of 2022 to take her clothes. Appellant was not sure when Alyssa last lived with him. Appellant admitted to taking Alyssa's belongings to her at her new home in East Canton sometime in 2023. Appellant does not believe any of these contacts with Alyssa have been detrimental to her health, safety, or welfare. When asked about his relationship with Alyssa prior to the no-contact order, appellant testified he worked twelve hours a day. However, he tried to help her when he could. Appellant believes he spent approximately $20,000 to $25,000 helping Alyssa. As to any text messages he exchanged with Alyssa, any texts of a sexual nature were not serious.

{¶19} On cross-examination, appellant testified he did receive notice of the no-contact order. However, he stated he "never read it." He gave it to Alyssa and she stated she would "take care of it," even though it was addressed to him. When asked by the court whether he received the no-contact order, appellant testified, "I received it and did not really read it. She kinda read it. Alyssa read it and told me that her dad didn't want me talking to her anymore." The court asked, "but you did receive, regardless if you read it, you did receive it," Appellant responded, "Yes."

{¶20} The trial court issued a judgment entry on July 20, 2023. The court set forth a summary of the testimony at the hearing. The trial court found appellant in

contempt for having personal and phone contact with Alyssa subsequent to the July 13, 2022 order. The court ordered appellant to pay $250.00 fine and attorney fees of $1,312.50. The court also ordered appellant to spend three days in the Stark County Jail, but permitted appellant to purge the jail time by making complete payment of the fine and attorney fees prior to a purge hearing.

{¶21} Appellant appeals the July 20, 2023 judgment entry of the Stark County Court of Common Pleas, Probate Division, and assigns the following as error:

## ASSIGNMENTS OF ERROR

{¶22} "I. THE TRIAL COURT ERRED BY DENYING RESPONDENT DUE PROCESS OF LAW, WHEREIN THE TRIAL COURT FAILED TO ENSURE THAT PETITIONER PROPERLY SERVED RESPONDENT WITH NECESSARY PLEADINGS AND/OR NOTICES IN ACCORDANCE WITH THE OHIO RULES OF CIVIL PROCEDURE. AS A RESULT, THE TRIAL COURT LACKED PERSONAL JURISDICTION OVER RESPONDENT AND ANY ORDERS SUBSEQUENTLY ISSUED BY THE TRIAL COURT WERE VOID AB INITIO AND MUST BE VACATED AND THE CASE DISMISSED.

{¶23} II. THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING RESPONDENT IN INDIRECT CIVIL CONTEMPT OF COURT AND ORDERING RESPONDENT TO PAY A FINE OF $250 AND PAY PETITIONER ATTORNEY FEES IN THE AMOUNT OF $1,312.50."

**ANALYSIS**

**I.**

{¶24} Appellant does not dispute that he received notice and an opportunity to be heard on the contempt motion and citation. However, appellant contends that since he did not have notice and an opportunity to be heard on the motion for a no-contact order in 2022, the trial court lacked personal jurisdiction to enter a subsequent contempt judgment against him. Appellant argues since the court lacked personal jurisdiction over him, the contempt judgment entry issued in 2023 is a nullity, and is void ab initio.

{¶25} Appellee echoes the language of the trial court in arguing that appellant had no statutory right to appear or right to have notice of the initial hearing on the motion for no-contact order because the trial court is the ward's "superior guardian." While there may be no statutory right to appear, appellee fails to recognize the basic constitutional right to due process. "Due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution, requires that every party to an action be afforded a reasonable opportunity to be heard after reasonable notice of such hearing." *Ohio Valley Radiology Associates v. Ohio Valley Hospital Assn.*, 28 Ohio St.3d 118, 502 N.E.2d 599 (1986). This Court has previously addressed the issue of due process in the guardianship context. *In re Guardianship of Flohr*, 5th Dist. Stark No. 2014CA00082, 2014-Ohio-5847.

{¶26} In *Flohr*, the trial court issued a judgment entry prohibiting the appellant from having any type of contact with the ward; however, the appellant did not receive notice of the motion or hearing. The appellant appealed the no-contact judgment entry, and argued the trial court denied him his fundamental right to due process. While this

Court recognized the probate court's plenary authority over the ward, we found "the extent of the probate court's authority must be scrutinized when used to restrict fundamental rights." We found the appellant in *Flohr* had a clearly established right to associate with another consenting adult (the ward). Accordingly, the appellant was entitled to due process before his right to associate was denied or restricted. We held that, "prior to placing restrictions on appellants' rights to see or contact the ward, we find the trial court was required to afford him due process rights." *Id*; see also *In re Guardianship of Gelsinger*, 8th Dist. Cuyahoga No. 108479, 2019-Ohio-4584 (despite the probate court's status as "superior guardian," due process requires notice and a reasonable opportunity to be heard when a ward's visitation is restricted).

{¶27} This case, like in *Flohr*, the trial court restricted appellant's clearly established right to associate with another consenting adult. However, this case differs from the *Flohr* case in one very important aspect. In *Flohr*, the appellant filed a direct appeal of the judgment entry issuing the no-contact order. In this case, appellant did not appeal the trial court's 2022 judgment entry. Rather, appellant appeals the judgment entry finding him in contempt.

{¶28} Appellant contends the trial court lacked personal jurisdiction over him to issue a contempt order because of the lack of due process in issuing the 2022 no-contact order, and argues any judgment entry issued after the 2022 entry is void. This Court has previously held that a judgment due to lack of personal jurisdiction may be void. *In re Change of Name of Biggerstaff*, 5th Dist. Perry No. 20 CA 00012, 2021-Ohio-591. However, the defense of personal jurisdiction is waivable due to the actions of the defendant. *Maryhew v. Tova*, 11 Ohio St.3d 154, 464 N.E.2d 538 (1984). "A defendant

must raise a challenge to the trial court's personal jurisdiction over him at the earliest opportunity; otherwise, he risks a finding that he waived any defects in service, allowing a court to enter a valid personal judgment against him." *Gliozzo v. Univ. Urologists of Cleveland, Inc.*, 114 Ohio St.3d 141, 2007-Ohio-3762, 870 N.E.2d 714.

{¶29} While appellant does not dispute he received a copy of the no-contact order in July of 2022, he did not assert the defense of personal jurisdiction until the contempt hearing in May of 2023. This Court has held that the implementation of a no-contact order issued restricting a ward's fundamental right to associate with another consenting adult is a final appealable order. *In re Guardianship of Flohr*, 5th Dist. Ashland No. 2014CA00082, 2014-Ohio-5847. Appellant did not appeal the trial court's 2022 order. Rather, during the ten months between the issuance of the no-contact order and the contempt citation, he continually violated the no-contact order.

{¶30} Here, appellant could have challenged the entry of the no-contact order by filing a Rule 60(B) motion for relief for judgment, filing a motion to vacate the judgment on grounds that it was void for lack of personal jurisdiction, or filed an appeal of the no-contact order. *Linquist v. Drossel*, 5th Dist. Stark No. 2006 CA 00119, 2006-Ohio-5712; *Morgan v. Salyers*, 5th Dist. Knox No. 14CA12, 2014-Ohio-4554 (party seeking to vacate a void judgment must file a motion to vacate or set aside); *In re Guardianship of Flohr*, 5th Dist. Ashland No. 2014CA00082, 2014-Ohio-5847 (implementation of a no-contact order issued restricting a ward's fundamental right to associate with another consenting adult is a final appealable order); see also *State ex rel. Athens Cty. Dept. of Job & Family Servs. v. Martin*, 4th Dist. Athens No. 07CA11, 2008-Ohio-1849 (party may submit himself

to the jurisdiction of the court by post-judgment conduct, thus waiving defects in the service of process and the court's corresponding lack of personal jurisdiction over him).

{¶31} In this case, appellant's objection as to personal jurisdiction was not made at the earliest opportunity, i.e., when appellant received notice of the no-contact order. Instead, appellant waited over ten months to raise an objection. During these ten months, appellant repeatedly violated the no-contact order by contacting Alyssa via phone, meeting her in-person, and having various other forms of communication with her. Accordingly, we find appellant waived defects in the service of process and the defense of lack of personal jurisdiction by his inaction and conduct after receiving notice of the July 2022 judgment entry. *State v. Haddix*, 5th Dist. Stark No. 2018CA00035, 2018-Ohio-2833 (any objection to lack of personal jurisdiction waived by appellant's failure to object or appeal on that basis).

{¶32} Appellant's first assignment of error is overruled.

**II.**

{¶33} In his second assignment of error, appellant essentially repeats the arguments made in his first assignment of error, i.e., that the trial court abused its discretion in ordering him to pay a fine and attorney fees when the trial court had no personal jurisdiction over him. Appellant also contends his contact with Alyssa was "beneficial" to her and thus he should not be fined or subject to paying attorney fees.

{¶34} An appellate court's standard of review of a trial court's finding of contempt is abuse of discretion. *State ex rel. Celebrezze v. Gibbs*, 60 Ohio St.3d 69, 573 N.E.2d 62 (1991). In order to find an abuse of discretion, we must determine the trial court's

decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶35} As discussed above, we find appellant waived his personal jurisdiction or due process defense by waiting over ten months to assert this defense. Further, in this case, it is clear that appellant violated the no-contact order multiple times, despite appellant's admission that he was served with the no-contact order. Appellant contacted Alyssa via telephone, was with Alyssa to get her car out of impound, engaged in inappropriate texting while Alyssa was at Oriana House, and went to her new home in 2023. If we were to accept appellant's argument, appellant could continually violate the no-contact order for years without any penalty.

{¶36} As to appellant's argument about the conduct allegedly being "beneficial" to Alyssa, the no-contact order issued in July 2022 does not provide any exceptions for allegedly beneficial conduct. Further, appellant's testimony that his contact with Alyssa was beneficial is controverted by the testimony of appellee.

{¶37} We find the trial court did not abuse its discretion in ordering appellant to pay a fine and attorney fees. Appellant's second assignment of error is overruled.

## CONCLUSION

{¶38} Based on the foregoing, appellant's assignments of error are overruled. The July 20, 2023 judgment entry of the Stark County Court of Common Pleas, Probate Division, is affirmed.

By: Delaney, P.J.,

Gwin, J. and

Hoffman, J., concur.